1 | LAW OFFICE OF WILLIAM J. HEALY
WILLIAM J. HEALY, #146158

2 | 748 Holbrook Pl.
Sunnyvale, CA 94087

3 | Telephone: (408) 373-4680

4 | ATTORNEYS FOR
Steven Bernaz and Christine Lee

5 |

**The following constitutes the order of the Court.**
**Signed: January 24, 2024**

*Stephen Johnson*

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

6 | UNITED STATES BANKRUPTCY COURT

7 | NORTHERN DISTRICT OF CALIFORNIA

8 | (San Jose Division)

9 | In re: ) Case No. 23-50629
)
10 | LILLY HUE VU, ) CHAPTER 11
)
11 | ) **_[PROPOSED]_ ORDER UNDER**
) **BANKRUPTCY RULE 2004**
Debtor. ) **COMPELLING EXAMINATION OF**
12 | **AND PRODUCTION OF**
13 | **DOCUMENTS BY THE DEBTOR**

14 | [NO HEARING REQUIRED]

15 | _____ )

16 | The Court having considered the *Ex Parte Application For Order Under Bankruptcy Rule*

17 | *2004 Compelling Examination Of And Production Of Documents By the Debtor* ("Application") filed

18 | on January 22, 2024 by creditors and parties-in-interest STEVEN BERNAZ and CHRISTINE LEE

19 | (jointly "Bernaz" or "Lee"), and good cause appearing therefor,

20 | **IT IS HEREBY ORDERED** that:

21 | 1. The Debtor to appear for examination by Applicants at the Law Office of William J. Healy,

22 | 748 Holbrook Pl, Sunnyvale, CA 94087, at a mutually agreeable location, or via Zoom on

23 | February 15, 2024 at 10:00 a.m.;

24 | 2. The Debtor to produce the documents described and specified in Exhibit A attached

25 | hereto to produce certain documents specified in Exhibit A hereto to Applicants' counsel for receipt on

26 | or before February 9, 2024; and

27 | 3. The Debtor to provide a custodian of records declaration authenticating all documents so

28 | produced.

**EXHIBIT A**

**DEFINITIONS\**

For purposes of these requests for document production, the following words shall have the meaning indicated below, unless otherwise stated:

1. "You,", "you", "Your", "your" or "Debtor" means Lilly Hue Vu, debtor and debtor-in-possession in the above-captioned bankruptcy case.

2. "John Ly" means John Ly, Debtor's husband or spouse.

3. "Ly-Vu Family Living Trust" means the trust of John Ly and Debtor, including the Ly-Vu Family Living Trust identified in Debtor's schedules in the above-captioned bankruptcy case and its officers, directors, partners, agents, employees, representatives, investigators, accountants and attorneys, and any merged, consolidated or acquired corporation and its predecessor, parent, subsidiary, division or affiliate, and any person acting on its behalf.

4. "Transfer" is used as that term is defined under 11 U.S.C. § 101(54) – *i.e.*, "'transfer' means the creation of a lien; the retention of title as a security interest; the foreclosure of a debtor's equity of redemption; or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property; or an interest in property."

5. "Document" or "Record' means any document or record in your custody, possession or control, including, but not limited to, any printed, written, recorded, taped, electronic, graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, inter-office communications, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials or any type of personal or telephone conversations, meetings or conferences (including, but not limited to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts,

receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or un-canceled checks or drafts, vouchers, charge slips, invoices, billings, purchase orders, hotel charges, accountant's reports, financial statements, checks, ledgers, deposit records, bank statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any documents. The term "Document" also means any and all computer records, data and information of whatever kind whether printed out or stored on or retrievable from any floppy diskette, compact diskette, magnetic tape, optical or magnetic-optical disk, hard drive or rapid access memory, including without limitation, all back-up copies, undeleted data, and dormant or remnant files. The Term ""document" and "documents" includes, without limitation, any electronically stored information ("ESI"), including metadata, by which, on which, or through which information of any type is communicated, transmitted, recorded or preserved.

6. "Concerning" means: with respect to, relating to, referring to, regarding, supporting, substantiating, purporting, embodying, establishing, identifying, listing, evidencing, comprising, connected with, memorializing, recording, commenting upon, responding to, showing, describing, analyzing, reflecting, representing, constituting, supporting, contradicting, or explaining, whether in who or in part.

7. "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, governmental body, commission or other such entity, and shall include its persons, agents and employees.

8. The term "Control" means having the right or ability to secure information or documents or a copy thereof, including, without limitation, from another person, or public or private entity having access to or possession thereof.

9. "Identify" or "Identity" means: (I) as to an individual, the full name, present or last known business and residence addresses, telephone number, occupation, job title and dates so employed, and, if not an individual, the type of entity and the address of its principal place of business; (ii) as to a document, the type of document (letter, memo, etc.), the identity of the author

or originator, the date authored or originated, the identity of each person whose name appears on the document and to whom the original or copy was addressed or delivered, the identity of each person you believe has present possession, custody, or control of the document and a description of the subject matter with sufficient particularity to identify and describe its production; and (iii) as to an event, occurrence or other fact, including oral conversations, the time, date, and location of such event, the persons present, a detailed description of the occurrences and surrounding circumstances and the substance of any conversations or other communications.

10. "Including" means "including but not limited to."

11. "And" and "or" each mean "and/or."

12. The singular includes the plural number and vice versa and the masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

## INSTRUCTIONS

1. Any document as to which a claim of privilege is or will be asserted should be identified by author, signatory, description (e.g., letter, memorandum, telecopy, recording, computer image etc.), title (if any), dates, addressees (if any), general subject matter, characteristics substantiating the claim of privilege, present depository and present custodian and a complete statement of the ground for the claim of privilege should be set forth. If it is maintained that any document which is requested has been destroyed, set forth the contents of the documents, the date of such destruction and the name of the person who authorized or directed such destruction.

2. If any of the documents cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

3. If any of the documents requested by a request for production of documents are not within your possession, identify each person who has possession of the Documents.

4. Electronically Stored Information ("ESI") shall be produced as follows.

(a) ESI should be produced in its native format, with all metadata intact, on compact discs, DVDs, zip drives, or hard drives and in the following format:
(a) databases are to be produced in a computer searchable and reasonably usable form;
(b) emails are to be produced in Personal Storage Table ("PST") or Extensible Markup Language ("XML") format;
(c) word processing documents are to be produced in Microsoft Word or Word Perfect format, unless such documents to not exist in the native format, in which case such

documents should be produced in searchable Portable Document Format ("PDF"), if they are maintained in this format in the ordinary course of business, or in Tagged Image File Format ("TIFF"), if they are maintained in any other format, consistent with the instructions below;

(d) spreadsheets are to be produced in Microsoft Excel format; and

(e) audio files are to be produced in MPEG-1 Audio Layer 3 ("MP3") format.

(b) To the extent no native data exists for a particular document, the document should be produced in TIFF, single page, black and white, dithered (if appropriate), Group 4 TIFF at 300 x300 dpi resolution and 8 ½ x 11 inch page size, except for documents requiring different resolution or page size. Each TIFF formatted file shall be produced with a unitization/load file in standard format (i.e., Opticon (.opt), Summation (.dii), IPRO (.lfp), Concordance (.opt, .dat) or the like) showing the Bates number of each page and the appropriate unitization of the documents. The TIFF images shall also be accompanied by extracted data or Optical Character Recognition data (OCR) in single page format.

(c) To the extent TIFF images are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in this format and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists in native format.

(d) For electronic documents produced in TIFF or native format, the producing party should produce the following metadata, to the extent such metadata exists:

    (a) for all electronic documents: starting Bates Number, ending Bates Number, number of pages in a document, starting attachment Bates Number and ending Bates Number;

    (b) for non-email electronic documents: file name (including extension), creation date, modified date, title, subject, author, company, last saved, file path (for files located on a shared space or server only), custodian of the record (for files located on the hard drive of a personal computer only) and MD-5 Hash values;

    (c) for emails: sent date, received date, to name, to address, from name, from address, cc name(s), cc address(es), bcc name(s), bcc address(es), subject, "re" or "fwd", replies sent to, attachment count and MD5 Hash values. Both paths and file names of images must exactly match their text files (except for the file extensions), including case sensitivity.

(e) Paper production of ESI is permissible only in the following circumstances:

    (I) The document was originally created and maintained as a paper document, i.e., handwritten notes.

    (ii) The document was originally created electronically, but upon reasonable due diligence, the producing party has determined that it no longer exists in that format and only exists as a paper file.

    (iii) The responsive data includes pleadings and orders filed with any court and letters between counsel.

    (iv) In circumstances where such a production would be unreasonably burdensome or otherwise not permissible under the Federal Rules of Civil Procedure, and where the producing party has raised the issue with the other party.

    (v) By separate stipulation.

    (vi) To the extent paper files are produced, the producing party shall provide a declaration by the custodian of records, or other party responsible for the collection and production of the subject documents, setting forth the reason/s why it is producing data in paper form and, if appropriate, the nature of the due diligence in attempting to confirm whether data exists electronically.

(f) The producing party should maintain the inherent integrity of all ESI such that it will not separate documents attached to one another. Said another way, it will preserve the "parent-child" relationship between the primary document and any attachments. The producing party should produce all documents in their entirety and without deletion, redaction or excision,

except as set forth below, regardless of whether the producing party considers the entire document or only part of it to be relevant or responsive.

(g) Should any portion of a document need to be redacted, the producing party should these documents as TIFF images as set forth above. If any portion of the documents is redacted, the producing party should stamp the word "REDACTED" beside the redacted information on each page of the document that is redacted and to provide a log detailing the nature of the redaction.

5. This request is a continuing one to the extent required by applicable law.

## REQUESTS FOR DOCUMENTS

1. Any and all Documents Concerning Your Transfer of Your interest in 1610 Oak St., Los Banos, CA 93635.

2. Any and all Documents Concerning John Ly's Transfer of interest in 1610 Oak St., Los Banos, CA 93635.

3. Any and all Documents Concerning the Ly-Vu Family Living Trust's Transfer of interest in 1610 Oak St., Los Banos, CA 93635.

4. Any and all Documents Concerning Your use of proceeds from the Transfer of interest in 1610 Oak St., Los Banos, CA 93635.

5. Any and all Documents Concerning Your Transfer of interest in 3499 Watters Dr., San Jose, CA 95127.

6. Any and all Documents Concerning John Ly's Transfer of interest in 3499 Watters Dr., San Jose, CA 95127.

7. Any and all Documents Concerning the Ly-Vu Family Living Trust's Transfer of interest in 3499 Watters Dr., San Jose, CA 95127.

8. Any and all Documents Concerning Your use of proceeds from the Transfer of interest in 3499 Watters Dr., San Jose, CA 95127.

9. Any and all Documents Concerning Your use of proceeds from the Transfer of interest in 14906 Reynaud Dr, San Jose, CA.

10. Any and all Documents Concerning Your ownership interest in stock, Including stock referenced in Debtor's Statement of Financial Affairs (Dkt.#4).

11. Any and all Documents Concerning John Ly's Your ownership interest in stock, Including stock referenced in Debtor's Statement of Financial Affairs (Dkt.#4).

12. Any and all Documents submitted by YOU to Creditor Quicken Loans LLC or Onslow Bay Financial LLC (servicer Flagstar Bank, N.A., f/k/a Flagstar Bank, FSB as indicated in Onslow Bay Financial LLC's Proof of Claim (Claim No. 3-1) filed in the above-captioned bankruptcy case) as part of your January 2021 refinancing of 3519 Slopeview Dr., San Jose, CA 95148.

13. Any and all Documents Concerning the value of 3510 Slopeview Dr., San Jose, CA as part of your January 2021 refinancing of 3519 Slopeview Dr., San Jose, CA 95148.

14. Your Federal Income Tax Returns for 2018-2020.

1     15. Any and all Documents Concerning any Transfers by the Ly-Vu Family Living Trust between August 1, 2019 and June 14, 2023.

     16. Any and all Documents Concerning the assets of the Ly-Vu Family Living Trust between August 1, 2019 and June 14, 2023.

     17. Any and all Documents Concerning the liabilities of the Ly-Vu Family Living Trust between August 1, 2019 and June 14, 2023.

**\*\*\*End of Order\*\*\***

1                                    COURT SERVICE LIST

2

3     All ECF Recipients

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28